KAREN P. HEWITT
United States Attorney
CARLOS ARGUELLO
Assistant U.S. Attorney
California State Bar No. 157162
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-6252
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,       )<br>                                )<br>                                )<br>            Plaintiff,          )<br>                                )<br>                                )<br>      v.                        )<br>                                )<br> REYNALDO SEGURA,                )<br>                                )<br>            Defendant.           )<br>                                )<br>                                )<br>                                )<br>                                )<br>                                )<br>                                )<br>                                )<br>                                )<br>                                )<br>_____) | Criminal Case No. 08cr2035JLS<br><br>Date:   July 25, 2008<br>Time:   1:30 p.m.<br><br>UNITED STATES' RESPONSE AND<br>OPPOSITION TO DEFENDANT'S<br>MOTIONS TO:<br><br>(1)  COMPEL DISCOVERY;<br>(2)  PRESERVE EVIDENCE;<br>(3)  DISMISS INDICTMENT -<br>     ALIEN WITNESS DEPORTED;<br>(4)  DISMISS INDICTMENT -<br>     GRAND JURY INSTRUCTIONS; &<br>(5)  FILE FURTHER MOTIONS<br><br>TOGETHER WITH  MEMORANDUM OF<br>POINTS AND AUTHORITIES, AND THE<br>UNITED STATES' MOTION FOR<br>RECIPROCAL DISCOVERY |

   The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Carlos Arguello, Assistant United States Attorney, hereby files its response and opposition to Defendant's above-referenced motions.  This response is based upon the files and records of this case, together with the attached memorandum of points and authorities, and the United States' motion for reciprocal discovery.

**I.**

**STATEMENT OF FACTS**

**A.   PRIMARY INSPECTION**

On Friday, June 6, 2008, at approximately 10:05 p.m., Defendant Reynaldo Segura ("Defendant"), age 33, drove a black 2002 Chevrolet Suburban, bearing California license plate 4XKU130, from Mexico to the San Ysidro, California, Port of Entry. Defendant was not the registered owner of the car. Officials at the port later determined that the license plate number did not correspond to the Suburban.

United States Customs and Border Protection Canine Officer Michael Outlaw was assigned to pre-primary roving duties on lane 10 at the port with his narcotics and concealed persons detector dog. This dog alerted to the driver's side rear tire area of Defendant's Suburban. Officer Outlaw then requested assistance.

Within moments, Customs and Border Protection Officer Kurt Sauer responded, approached Defendant, and asked him a number of routine questions. Defendant, a United States citizen, identified himself with a United States passport and a California drivers license. Both documents had an affixed photograph of Defendant but bore the name of Dominic T Le Duong. Officers later determined that the passport had been lawfully issued but was reported "lost/stolen" and the photograph of Defendant was not that of the valid owner. Moreover, the California drivers license was counterfeit.

Defendant stated he was not the owner of the Suburban but it belonged to his girlfriend. He could not provide the registration to the vehicle. Defendant also told the officer he was going home to San Diego and had nothing to declare. During this brief interaction, the officer noticed that Defendant stuttered when answering questions,

spoke in a low voice, repeatedly shifted in his seat, and avoided eye-contact.

Customs and Border Protection Officer Michael Kaline also responded to Defendant's Suburban in the pre-primary lanes. Officer Kaline briefly inspected the Suburban and saw two non-factory sheet metal compartments in the undercarriage area. He also noticed that the bolts supporting the gas tank had tool marks and appeared to have been recently removed. As a result, Officer Kaline drove the Suburban to the secondary inspection area and asked a fellow officer to escort Defendant to the security office.

**B.    SECONDARY INSPECTION**

Customs and Border Protection Officer Kaline continued his inspection of the vehicle in the secondary lot. The officer, with the assistance from other officers, removed the Suburban's rear seats. Once officers removed the seats, Officer Kaline saw a metal panel which he opened, and found two male undocumented aliens laying in the non-factory compartments.

Once the two individuals got out of the compartment, Officer Kaline noticed that the original gas tank had been removed in order to accommodate one of the compartments. He also observed that the gas line to the Suburban had been re-routed through the non-factory compartment on the driver's side. It also appeared to the officer that a smaller gas tank from another vehicle was placed in the rear cargo area. Additionally, a hose had been installed in order to connect the smaller tank to the fueling area.

Officers then arrested Defendant.

It should be noted that during the inspection, Customs and Border Protection Officer Mark Van Luven found a cellular phone in the

1 Suburban's center console cup holder.

## C.  DEFENDANT'S STATEMENTS

Customs and Border Protection Enforcement Officer Michael Prado assumed responsibility for this case. At approximately 1:00 a.m., Enforcement Officer Prado advised Defendant of his Miranda rights in English in the presence of Customs and Border Protection Officer E. Velazquez. Defendant acknowledged and waived his rights, and agreed to make a statement.

Defendant stated he drove the Chevy Suburban containing two undocumented persons under duress and fear. Defendant told Officer Prado of the events that previously transpired in Mexico. He stated that he went to Tijuana with his brother, Nicholas Segura, on Thursday evening (officers arrested Defendant on late Friday evening). They parked in the United States and walked into Tijuana. They were celebrating his brother's birthday so they went to a bar in the "Revolucion" area. Eventually, Defendant saw that his brother left the bar with a woman so he decided to leave, as well.

Defendant claimed he walked on the street and eventually spoke to an unknown man promoting a nightclub. Defendant told the man he had no money for the cover charge, so the man hailed a taxi for him that would drive him to an automated teller machine. The taxi driver took Defendant to a few machines but Defendant was unsuccessful in withdrawing any money. The cab driver then returned Defendant to the same nightclub and unknown promoter. Defendant told the promoter he still had no money. At this point, the promoter demanded a $20.00 cab fee from Defendant, who reminded the man he had no money.

According to Defendant, he offered his watch to the promoter as collateral for the $20.00 debt. The man refused the offer and

threatened to stab Defendant if he did not pay him. Unknown persons then forced Defendant into a car and drove him approximately eight miles east of Tijuana where they covered his face and hit him in the head. Unknown persons then took Defendant to a home where he waited several hours without food or water. By this time it was very early Friday morning. At the home, his abductors took pictures of him and made further threats against him and his family. Defendant claimed that these unknown persons told him he would have to drive a car through the border.

On Friday evening, Defendant was eventually given the Chevy Suburban to drive across the port of entry. His captors also gave Defendant a cell phone. It took Defendant approximately eight minutes to arrive at the port from where he was held; he knew the car contained "something" such as drugs or people. Once at the port, he was contacted by the smugglers on the phone and instructed to remain in a specific vehicle lane. When asked why he said nothing to the U.S. officials in the pre-primary area about his situation, Defendant stated he was afraid the smugglers would harm him since he believed they were nearby.

After the interview with Defendant concluded, Officer Prado took photographs of Defendant's back and chest. Additionally, with the assistance of a medical first responder, the officer examined Defendant for injuries. With the exception of a bruised pinky finger on Defendant's right hand, the officer found no evidence of any injury.

D.  **MATERIAL WITNESS LOPEZ-VAZQUEZ' STATEMENTS**

Enforcement Officer N. Gonzalez interviewed material witness Arvey Rolando Lopez-Vazquez. The material witness, age 30, admitted

1 he is a citizen and national of Mexico, with no legal right to enter
2 or reside in the United States.  Lopez-Vazquez, originally from
3 Chiapas, recalled that the day prior to his apprehension, he made
4 arrangements with an unknown male in Tijuana to be smuggled into the
5 United States in exchange for $3,500.00.

6     This same unknown male placed him in the compartment in the
7 Suburban.  While being placed in the compartment, the material witness
8 noticed that there was another man standing near the car, as well.
9 However, he was unable to see that person's face.  Lopez-Vazquez
10 estimated he had been in the compartment for nearly thirty minutes.
11 He informed the officer that he intended to travel to the state of
12 Washington with his brother who was also found in the compartment with
13 him.

14 **E.    RELEASED ALIEN LOPEZ-VAZQUEZ' STATEMENTS**

15     Enforcement Officer N. Gonzalez also interviewed Sergio Arturo
16 Lopez-Vazquez ("Sergio"), the brother of material witness Arvey
17 Rolando Lopez-Vazquez.  Sergio, age 21, likewise admitted he is a
18 citizen and national of Mexico, with no legal right to enter or reside
19 in the United States.  Sergio also told the officer he was originally
20 from Chiapas.  Sergio informed that two days prior to his
21 apprehension, he made arrangements with an unknown female in Tijuana
22 to be smuggled into the United States in exchange for $2,500.00.

23     On the day of his apprehension, Sergio was placed into the
24 compartment by two females.  He estimated he had been in the
25 compartment for approximately thirty minutes.  He informed the officer
26 that he intended to travel to the state of Washington with his
27 brother.  Officials granted Sergio a voluntary return back to Mexico.
28 ///

**F.   THE INDICTMENT**

On June 18, 2008, a grand jury returned a three-count Indictment against Defendant charging him with one count of bringing in an illegal alien for financial gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii), with an aiding and abetting allegation under Title 18, United States Code, Section 2; one count of bringing in an illegal alien without presentation, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii); and one count of Misuse of a Passport, in violation of Title 18, United States Code, Section 1544.

## II.

### POINTS AND AUTHORITIES

**A.   DEFENDANT'S MOTION FOR DISCOVERY**

The United States has produced approximately 75 pages of discovery. Additional discovery will be produced as it is available. At this time, the United States is awaiting further Customs and Border Protection reports, and digital video disks which will be provided to Defendant once they have been received. The discovery produced is in excess of that required by Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act (now covered by Rule 26.2 of the Federal Rules of Criminal Procedure). As to the physical evidence, the United States will make it available for viewing by defense counsel at a mutually convenient time and place.

As to exculpatory information, the United States is well aware of its obligation under Brady v. Maryland, 373 U.S. 83 (1963) and will comply.

The United States will provide a list of witnesses in its trial memorandum. The grand jury transcript of any person who will testify

1  at trial will also be produced.

2  The United States has provided and will continue to provide
3  information within its possession or control pertaining to the prior
4  criminal history of the Defendant.  Evidence of other acts or crimes
5  by the Defendant similar to this alien smuggling incident will be
6  provided once the information is received.  The United States intends
7  to seek permission to introduce this evidence under Fed. R. Evid.
8  404(b) at trial.  The United States also intends to seek permission
9  to impeach Defendant with any felony conviction he may have under Fed.
10 R. Evid. 609(a)(1) if he testifies at trial.

11 The United States will produce the reports of any experts that
12 it intends to use in its case-in-chief at trial or are material to the
13 preparation of the defense.

14 In view of the above-stated position of the United States
15 concerning discovery, it is respectfully requested that no orders
16 compelling specific discovery by the United States be made at this
17 time.  The United States also respectfully requests reciprocal
18 discovery of the Defendant.  If and when individual problems arise
19 which cannot be resolved between counsel for Defendant and the United
20 States, the matters can be submitted to the Court for decision.

21 **B.    PRESERVATION OF EVIDENCE**

22 The United States does not oppose any reasonable request to
23 preserve evidence.

24 **C.    DEFENDANT HAS NO RIGHT TO THE RETENTION OF THE ALIEN WITNESS**

25 Customs and Border Protection officials are mindful of their
26 "dual responsibility" as described by United States v. Valenzuela-
27 Bernal, 485 U.S. 858 (1982), and several steps are taken to ensure a
28 good faith determination is made as to each alien.  First, based upon

an examination of the facts and circumstances of the case and upon the statements of the illegal aliens, the officers make a good-faith determination whether the aliens have any evidence helpful to the defendant. Second, in an abundance of caution, and not required under any legal theory, defendants are often asked whether they think any of the undocumented aliens may have information favorable to them.[1] If the defendant indicates that any of the undocumented aliens arrested with defendant may have information favorable to him, Government agents will re-evaluate whether or not that alien does, in fact, have any potentially helpful, and non-cumulative, information.

A defendant must make the requisite two-part showing of materiality and bad faith set out in Valenzuela-Bernal. The defendant must demonstrate that an alien witness has material, relevant, and non-repetitive testimony, and then the defendant must demonstrate that the Government removed that alien in bad faith.

"In cases of constitutionally guaranteed access to evidence, where the Government loses potentially exculpatory evidence, . . . the defendant must make an initial showing that the Government acted in bad faith <u>and</u> that this conduct resulted in prejudice to the defendant's case." United States v. Armenta, 69 F.3d 304, 307 (9th Cir. 1995) (citing United States v. Dring, 930 F.2d 687, 693 (9th Cir. 1991), and United States v. Valenzuela-Bernal, 458 U.S. 858, 866-67 (1982)). See also United States v. Ramirez-Jiminez, 967 F.2d 1321, 1325 (9th Cir. 1992).

---

[1] As noted above, this form that defendants then sign is commonly, although mistakenly, referred to as a Lujan-Castro "waiver" by both the Government and the defense bar.

1    Bad faith as a general rule entails "intentional" government misconduct. <u>United States v. Armenta</u>, 69 F.3d 304, 307 n.1 (9th Cir. 1995) (citing <u>Dring</u>, 930 F.2d at 695). To show bad faith, Defendant must establish that the United States intentionally returned witnesses or suppressed evidence to gain an unfair tactical advantage. <u>Armenta</u>, 69 F.3d at 308; <u>United Sates v. Laurins</u>, 857 F.2d 529, 538 (9th Cir. 1988); <u>Dring</u>, 930 F.2d at 695. Bad faith constitutes "official animus" or a "conscious effort to suppress exculpatory evidence." <u>Jones v. McCaughtry</u>, 965 F.2d 473, 477 (7th Cir. 1992) (citing <u>California v. Trombetta</u>, 467 U.S. 479, 488 (1984)).

No such showing has been made here.

Indeed, Defendant merely stated that the released alien could not identify the driver -- a position already maintained by the retained witness. Additionally, Defendant believes that the released alien's statement that he was placed into the compartment by a female is material to his defense. However, the retained material witness has stated he could not identify the Defendant as being present at the time he was placed into the compartment.

In no way is this a "plausible showing" that his testimony would be favorable and material to the defense as mandated by <u>Valenzuela-Bernal</u>. It is merely repetitive evidence. Furthermore, Defendant's contention was not supported by a signed affidavit sworn to under oath before a magistrate court – requirements the *United States* must follow when it asserts that an alien's testimony is material in a criminal proceeding, and that, as a result, the witness should be detained pending trial. <u>See</u> 18 U.S.C. § 3144; <u>see also</u> <u>Valenzuela-Bernal</u>, 458 U.S. at 873 (holding that when "the criminal defendant . . . advance[s] additional facts, either consistent with facts already

known to the court or accompanied by a reasonable explanation for their inconsistency with such facts, with a view to persuading the court that the deported witness would have been material and favorable to his defense," this "explanation of materiality . . . should be verified by an oath or affirmation of either the defendant or his attorney").

Valenzuela-Bernal holds that absent a showing of both materiality and bad faith, Defendant is entitled to no relief. Defendant has failed to even remotely show that the released alien had any exculpatory or favorable evidence. Defendant's motion to dismiss should be denied.

**D.    THE GRAND JURY INSTRUCTIONS WERE APPROPRIATE**

Defendant moves to dismiss the indictment based on the instructions give to the Grand Jury. Defendant's briefing is identical in all relevant aspects to the briefing submitted in United States v. Martinez-Covarrubias, Case No. 07CR0491-BTM, and United States v. Jimenez-Bermudez, 07CR1372-JAH. Accordingly, the Government explicitly incorporates by reference the briefing on this issue that was filed in Martinez-Covarrubias and Jimenez-Bermudez.

This motion has been denied by each court that has considered it, and should also be denied in this case. If the Court would like further briefing on this issue, the Government would request leave to file a supplemental brief.

**E.    LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request to file further motions if based on newly acquired discovery.

///

///

**III**

**UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

The United States hereby requests Defendant to deliver all materials to which the United States may be entitled under Federal Rules of Criminal Procedure 16(b) and 26.2.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant's motions be denied where opposed.

DATED: July 18, 2008.

    Respectfully submitted,

    KAREN P. HEWITT
    United States Attorney

    s/Carlos Arguello

    CARLOS ARGUELLO
    Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,    )<br>                              )<br>            Plaintiff,         )<br>                              )<br>            v.                )<br>                              )<br> REYNALDO SEGURA,             )<br>                              )<br>                              )<br>            Defendant.        )<br> _____)| Case No. 08cr2035JLS<br><br><br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

   I, CARLOS ARGUELLO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

   I am not a party to the above-entitled action. I have caused service of a MOTION IN RESPONSE AND OPPOSITION TOGETHER WITH UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

   Attorney Hanni M. Fakhoury
   Federal Defenders of San Diego, Inc.

   I declare under penalty of perjury that the foregoing is true and correct.

   Executed on July 18, 2008

                                        s/ Carlos Arguello
                                        _____
                                        CARLOS ARGUELLO

 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28